## Case No. 1,722.

### BOWEN v. HERRIET.

[1 MacA. Pat. Cas. 310.]

Circuit Court, District of Columbia. Sept., 1854.

PATENTS—INTERFERENCE—RIGHT OF APPEAL FROM COMMISSIONER.

[No appeal lies from a commissioner's decision on interference where the issues tried were the same, in effect, as those tried on a former interference. Pomeroy v. Connison, Case No. 11,259, followed.]

[Appeal from decision of commissioner of patents.

[Application by Julius Herriet for a patent. From a decision of the commissioner of patents on interference, Bowen, assignee of John L. Kingsley, appeals. Dismissed.]

W. P. N. Fitzgerald, for appellant.
Chas. M. Keller, for appellee.

MORSELL, Circuit Judge. On the 16th of April, 1852, Julius Herriet made his application for a patent, which was so modified afterwards as to present his claim in the form in which it now is. In his specification he says: "What I claim as my invention, and desire to secure letters-patent for, is making moulds and plates for printing characters or figures of gutta-percha or India rubber, compounded with some other substance or substances, substantially such as described, which shall give to the compound the required hardness and stiffness, and not destroy its plasticity when in a heated state, substantially as described." He says his invention consists in producing printing-plates and moulds of a preparation or compound of which gutta-percha or India rubber constitutes the chief ingredient, which preparation or compound shall be sufficiently plastic when heated to admit of moulding or embossing by pressure to form a mould from a form of types, which can then be distributed, and the printing-plate or plates thus formed by the mould or moulds, when produced and cold, will be sufficiently hard to present sharp lines and angles and to resist the required pressure for practical and economical purposes, and when worn out admit of being worked over again by being reheated. He says as to the composition: "I take by weight three parts of gutta-percha or three parts of India rubber or caoutchouc, and three parts of finely-pulverized graphite or soap-stone, or plaster of

Paris, or chloride of lime, or per-oxide of manganese, or other equivalent, and by grinding or otherwise in a heated state mix them together as in the manufacture of the usual compounds of gutta-percha or India rubber."

During the pendency of this application, that is to say, on the 23d of January, 1853, a patent for a composition of matter consisting of gutta-percha, oxide of iron, and oxide of antimony had been granted to John L. Kingsley. On the 5th of February, 1853, the commissioner in his letter directed to Herriet states: "A patent was granted to John L. Kingsley in the early part of January, 1853, for the use of a composition which, as far as can be ascertained from your specification and modified amended claim, is the equivalent of yours; or, to say the least, it performs all that you claim to do. Now, unless you are enabled to point out something specific which you have done that was not done by Mr. Kingsley, this reference must stand as a bar to the grant of your claim. If you regard the point of the invention in the two cases as the same, but dispute the priority, then you will of course call for the declaration of interference."

At the request of the parties an interference was declared between Herriet's application and Kingsley's patent on the 23d of July, 1853, and a hearing was appointed for the 5th of September, 1853, under which authority testimony was taken and filed by Herriet. On which 5th of September, the day set for the hearing, Kingsley filed a new application for a gutta-percha composition for stereotyping, which in substance states his claim to be making a composition or compositions that can be hardened at will or made soft when required without deterioration, using the natural or uncured gums, gutta-percha, or caoutchouc or India rubber as a basis for his compositions, and combining therewith any and all foreign or other substances which will render a composition wholly or partially rigid when required for use, that is, when used for moulds or for plates for stereotype purposes, and the adaptation of these plates to printing for all stereographic or letter-press printing. The particular description of foreign substances particularizes a great number, embracing metals, stones, alkaline earths, hard gums, resin, and glue; after which he says: "One of these compounds being as follows, viz.: Mix one part of per-oxide of antimony with nine parts of per-oxide of iron, both being in the form of impalpable powder, and these I grind into gutta-percha, in the proportion of one pound of gum to one pound of mixed powder, the same being ground together in the ordinary way of mixing the gums for use, by grinding the same between two rollers of different running speeds."

Under these circumstances, the day of hearing was postponed to the first Monday in October. A new interference, embracing Kingsley's new application and a patent of Leonardo Westbrook of July 19th, 1853, the application of T. N. Dickenson, and that of Herriet, was ordered for the first Monday in October. On the 10th of December, 1853, the case was finally decided by the commissioner on the whole of the testimony taken in the interference between said parties Herriet—Kingsley, Dickenson, and Westbrook. He says, after the most careful consideration of the testimony in this case, Julius Herriet is found to be the first inventor of the subject-matter of the present interference. The reasons are more fully stated in a paper on file. A patent will therefore be issued to the said Herriet unless some of the other parties appeal from this decision within thirty days from this date. Dickenson had withdrawn his application, and no appeal was prosecuted by Westbrook; so that the only part of the case now before me is that which was between Kingsley, assignor of Bowen, and Herriet.

It is apparent on the face of these proceedings that the subject which claims the first consideration is that which is connected with my jurisdiction; that is, whether the essential part of the issue between these two parties on which the decision just recited is grounded was not the same with the subject-matter of the patent granted to Kingsley in January, 1853, alluded to in the first interference declared.

For the purpose of a comparison, let the facts be noticed in the last branch of his specification filed in this case, in which he particularly states the foreign substances of which his composition consisted. He says: "Mix one part of per-oxide of antimony with nine parts of per-oxide of iron, both being in the form of impalpable powder, and these I grind into gutta-percha, in the proportion of one pound of gum to one pound of the mixed powder, the same being ground together in the ordinary way of mixing the gums for use," &c. In the other part of his specification he claims for his composition a great number of other foreign substances; but, as he himself says, the oxides were the best for the purpose of the invention.

In the testimony taken in this case since he filed his schedule he says that he had been experimenting for a number of years up to the year 1849 to discover a suitable composition with gutta-percha for plate and moulds for stereotyping purposes, and found the materials did not sufficiently harden the gum; that he had previously experimented with India rubber, but found that not so hard as gutta-percha. After stating particularly a great number of such foreign substances used by him in each of said years 1845, 1846, 1847, 1848, and 1849, he says in this last year he tried, in a compound with gutta-percha, the oxides of iron and antimony, which he found to answer best and to

harden better than any other composition which he had made. To use his own language, he says: "As I mix per-oxide of iron and antimony, they form a chemical combination with the gum, and render it much harder than any other substance that I have been able to find. My composition made of those materials is as hard as copper; it is very much harder than gutta-percha." Such, then, being the facts on the part of the appellant, I think I cannot be mistaken in the deduction than in the estimation of Mr. Kingsley the two foreign agents—oxide of iron and antimony, with gutta-percha chemically combining in the composition—were, if not the only sufficient foreign substances, greatly the best.

It is true Herriet contends, and has offered proof for the purpose of showing, that a mixture of graphite or the other substances,, as stated in his specification, in composition with gutta-percha, are, or would be, sufficient; but it is not proved or pretended that they are the best or better for the purpose or more than equivalent to those stated in Kingsley's patent. If, then, there be no doubt that the required consistency and hardness of gutta-percha or the other gum for stereotyping purposes have been discovered by Kingsley to have been perfectly effected by the process or application of the foreign agents mentioned in his patent, (and I think there can be none,) then what is the rule of patent law? Curtis says: "Where the invention or subject-matter is the process of making a particular thing, which may or may not be made by more than one process, the inquiry will be whether it has been made by the use of the process covered by the patent." In section 145 he says: "It is therefore essential that the specification should describe some practical mode of carrying the principle into effect, and then the subject-matter will be patentable, because it will be, not the principle itself, but the mode of carrying it into effect; and on the question of infringement it will be for the jury to say whether another mode of carrying it into effect is not a colorable imitation of the mode invented by the patentee." In section 146 he states the rule to be, that although the specification, after having described the application of the principle by some contrivance or arrangement of matter, omitted to claim all the other forms of apparatus or modifications by which the principle might be applied beneficially. Yet the patent does cover all these without particular description, by covering the application of the principle. Again, section 229 (same book), it is laid down "that wherever the real subject covered by the patent is the application of a principle in arts or manufactures, the question on an infringement will be as to the substantial identity of the principle and of the application of the principle; and consequently the means, machinery, forms, or modifications of matter made use of will be material only so far as they affect the identity of the application."

It must therefore satisfactorily appear that, according to the rules of law applicable to the foregoing facts, the change, if any, made in the invention aforesaid by the composition formed by the application of any of the other different kinds of foreign substances did not materially vary the identity of them, but must be considered as a mere substitute; and therefore the issue tried as between these parties was essentially that formed under the first original declaration of interference and the appeal virtually by a patentee. For the foregoing reasons, and upon the authority of the decision in the case of Pomeroy v. Connison, decided by Judge Cranch in the year 1842 [Case No. 11,259], to which I particularly refer, my opinion is that I have no jurisdiction of the appeal of Bowen, Assignee of Kingsley, v. Herriet, and shall, with this opinion, return the papers, specimens, &c., to the patent office.